UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN REMBERT, | ) | |
| | ) | Case No. 1:07-CV-1189 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| JULIUS WILSON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the Court is Petitioner John Rembert's ("Rembert") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus [dkt. 1]. The case was automatically referred to Magistrate Judge David Perelman for preparation of a Report and Recommendation (R&R). Respondent Warden Julius Wilson (the "State") filed a Return of Writ [dkt. 5] and Rembert filed his reply [dkt. 7].

Judge Perelman subsequently issued his R&R, which recommended that this Court deny Rembert's petition [dkt. 8]. Rembert appears to have filed timely[1] objections to the R&R [dkt. 9], and the State did not respond.

The Court has carefully reviewed *de novo* Rembert's objections, and for the reasons articulated below, the Court **ADOPTS** the R&R and **DISMISSES** Rembert's Petition.

**I.  BACKGROUND**

The R&R sets forth the procedural history of this case, as well as the factual background as

---

[1] The Report and Recommendation was issued on September 24, 2007; objections were due 10 days after Rembert's receipt of the R&R. Objections were filed with this Court on October 22, 2007. In his Objections, however, Rembert claims that he received a copy of the R&R on October 1, 2007 and that he mailed his Objections on October 3, 2007. The Court will treat Rembert's objections as timely filed.

described in the opinion of the Ohio Court of Appeals [dkt. 8, at 1-8]. Rembert does not challenge the R&R's articulation of the procedural history or factual background[2] in his Objections. Accordingly, in the interest of efficiency, the Court adopts the R&R's articulation of the relevant factual and procedural background, and will only provide a brief summary for purposes of this Court's *de novo* review of Rembert's objections.

### A. Factual and Procedural History

Rembert's petition for habeas relief challenges the Constitutionality of his July 9, 2004 conviction following a jury trial. Rembert was convicted of five counts: 1) aggravated robbery with a firearm specification; 2) robbery with a firearm specification (which merged into the prior count); 3) kidnaping with a firearm specification; 4) abduction with a firearm specification (which merged into the kidnaping count); and 5) having weapons while under a disability with firearem and repeat violent offender specifications. Subsequently, Rembert was sentenced to an aggregate term of twenty-four years in prison.

On direct review of his convictions, the Ohio Fifth District Court of Appeals summarized the facts of the case as follows:

> Kimberly Gorman was planning to rob her father, Kenneth Gorman, in order to obtain some money and Xanax pills from his residence. Kimberly first approached her boyfriend, Joe Thompson for help, but he refused to help her commit the robbery. Thereafter, Kimberly contacted appellant, whom she called "J. R." Appellant agreed to participate and told Kimberly to meet him at Liberty Park. From there,

---

[2] Rembert does claim that there is a "factual dispute concerning the identification of petitioner as the accomplice in the robbery in question." [dkt. 9, at 8]. This dispute, however, is not with Judge Perelman's articulation of the facts, but with the State court's finding of fact. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Rembert's protestations about the victim's identification of him do not satisfy that heavy burden.

Kimberly and the appellant went to the appellant's house to work out a plan. The plan that they worked out was that Kimberly would knock on the door while appellant was hiding against the house on the left side of the door. Once her father opened the door, Kimberly would go inside. When Kimberly looked out the door it was appellant's cue to come inside.

Around 9:00 that evening, appellant and Kimberly got into appellant's car and drove to Kenneth Gorman's house. While Kimberly was hiding in the back seat, she noticed a shot gun partially covered with a jean jacket on the floor. When they arrived at her father's house, Kimberly went to the door while appellant hid behind the porch swing against the house. Kimberly knocked at the door, and when her father answered, she told him that she was in trouble and needed to come in. She then went into the house and looked back, giving appellant his cue to come inside. Appellant pushed his way into the residence, armed with a shotgun. Appellant pointed the shotgun at Kenneth Gorman and told him to do as he said. Mr. Gorman attempted to fight back by grabbing the shotgun barrel but appellant hit him in the chin with the shotgun. Appellant ordered Mr. Gorman into the bedroom and to lay face down on the bed. Appellant ordered Kimberly to tie her father up but she could not. Appellant then put tape around Mr. Gorman's mouth and his wrists and hog tied him with a phone cord. Appellant had brought the tape and phone cord with him. Appellant then went through Mr. Gorman's pockets and stole some money. Appellant then told Kimberly to go upstairs and look for the rest of the money and the Xanax pills. When she came back downstairs, appellant had carried her father into the bathroom. Appellant threatened to kill Mr. Gorman if he moved. Kimberly and appellant then left, leaving Mr. Gorman tied up in the bathroom.

Kimberly and appellant went back to appellant's house to split up the money and smoke some crack cocaine. Mr. Gorman was able to untie himself and called 9-1-1. When Officer McKinley of the Mansfield Police Department arrived in response to the 9-1-1 call, Mr. Gorman gave him a description of the man who committed the robbery with his daughter. Officer McKinley testified that Mr. Gorman advised him that the man was a black male, approximately 5'9", 170 pounds and wearing black clothes.

Kimberly Gorman was arrested and taken to the Juvenile Detention Center on November 26, 2003. She initially refused to cooperate with police, but later informed the police that the man who had participated in the robbery was named J.R. She identified appellant in a photo array shown to her. Mr. Gorman also picked appellant out of the photo lineup.

Based on the identification provided by Kimberly and Kenneth Gorman, the police determined that J.R. was appellant, John Rembert. It

> was also determined that appellant was on parole. [Footnote 1: Appellant had prior convictions for aggravated robbery, robbery and rape.] Appellant's parole officer was contacted. Appellant's parole officer conducted a search of appellant's residence. During that search, parole officers found a shotgun and a jean jacket.
>
> The jury returned a verdict of guilty on all counts and found appellant guilty of the firearm specification. In addition, the trial court made a finding of guilty on the repeat violent offender specification.

*State v. Rembert* (Sept. 2, 2005), Richland App. No. 04-CA-66, 2005 Ohio 4718, 2005 Ohio App.

The State's factual findings are "presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On September 2, 2005, the state appellate court affirmed Rembert's conviction.[3] An appeal to the Ohio Supreme Court was taken, pro se, and denied as not involving any substantial constitutional question.

Rembert then sought to reopen his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B), arguing that he had been denied effective assistance of appellate counsel during appeal of his conviction.[4] The appellate court again denied Rembert's appeal, finding that he failed to demonstrate a genuine issue that his appellate counsel had been ineffective. Rembert appealed the denial of his Rule 23(B) motion to the Ohio Supreme Court, which denied him leave to appeal and again dismissed the appeal as not involving any substantial constitutional question. Rembert did not appeal to the U.S. Supreme Court.

### B. Rembert's Two Grounds for Relief

---

[3] Rembert's two grounds for relief arise out the alleged ineffective assistance of appellate counsel during this proceeding.

[4] These are the same claims Rembert pursues in his petition for habeas relief.

-4-

On April 23, 2007, Rembert filed his petition for habeas relief in this Court, asserting two grounds for relief. In his two claims for relief, Rembert challenges the decision of the state appellate court denying his Rule 26(B) motion to reopen his direct appeal, arguing that he was denied the effective assistance of appellate counsel.

> **Ground One:** Petitioner was denied the effective assistance of appellate counsel, due process and equal protection of the law, *when counsel failed to properly address the trial court coercion of testimony from the State's key witness* in violation of the Fourteenth Amendment to the United States Constitution.
>
> **Ground Two:** Petitioner was denied the effective assistance of appellate counsel, due process and equal protection of the law *when counsel failed to raise petitioner's most viable, significant and obvious issues on direct appeal* in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

[dkt. 1, at 10 & 15 (emphasis added)].

**II.  STANDARD OF REVIEW**

**A.  Antiterrorism and Effective Death Penalty Act of 1996**

Rembert filed his § 2254 Petition on April 23, 2007. (Doc. 1.) Therefore, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of that petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).[5]

The State concedes that there are no issues of untimeliness, failure of exhaustion, or other procedural bar in this case [dkt. 5, at 13-18]. Therefore, the Court can begin its analysis of the merits of Rembert's objections.

---

[5]  The AEDPA applies to petitions filed *after* the Act's April 26, 1996 effective date. *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

The AEDPA sets forth the standard by which federal courts review the merits of properly-asserted grounds for relief. In pertinent part, the AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, the various circuits interpreted the standard to be applied differently under these provisions. In response to these nationwide variations, the Supreme Court directly addressed the meaning of the AEDPA's statutory language and, as the Sixth Circuit has confirmed, announced that the statute "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added).

> The Supreme Court clarified the language of § 2254(d)(1), and held that:
> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413 (emphasis added). The Court offered additional guidance regarding the

meaning of "unreasonable application." A state-court opinion can also engender the 'unreasonable application' of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id*. at 409. Further, the Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* (emphasis added). Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

### B.    Ineffective Assistance of Counsel Claims

Rembert's two grounds for relief are based on ineffective assistance of counsel claims. The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Evan v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair. *Strickland v. Washington*, 466 U.S. 668 (1984). *See also, United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). Disagreement by a defendant with tactics or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy. *Strickland*, 466 U.S. at 689. The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability.

*Kimmelman v. Morrison*, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction. *Evitts v. Lucey*, 469 U.S. 387 (1985). The Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

*McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.). The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel. *Burton v. Renico*, 391 F.3d 764 (6th Cir. 2004).

A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if those claims are without merit. *Ibid*.

Under the AEDPA this Court must first determine whether the state court's application of the Strickland standard was objectively unreasonable. *Alley v. Bell*, 307 F.3d 380, 400 (6th Cir. 2002), *quoting Bell v. Cone*, 535 U.S. 685, 698 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, [petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." (Citation omitted.)).

**III.    REMBERT'S OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), this Court reviews de novo the portion of the magistrate judge's report and recommendation to which specific objections have been made. In reviewing the objections, the district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). However, "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Curie*, 50 F.3d 373, 380 (6th Cir. 1995). If the court accepts the R&R, it is not required to "state with specificity what it reviewed; it is sufficient for the Court to say that it has engaged in a *de novo* review of the record and adopts the Magistrate Judge's report and recommendation." *Lardie v. Birkett*, 221 F.Supp.2d 806, 807 (E.D. Mich. 2002); *see also Tuggle v. Seabold*, 806 F.2d 87, 92-93 (6th Cir. 1986) (noting that "statement in order that district judge made de novo review of record and all objections to magistrate's findings and recommendations was sufficient" and that "[n]o further articulation was required.").

### A. Rembert's First Objection - Ground One

Rembert argues in his first ground for relief that the state appellate court (ruling on Rembert's Rule 26(B) motion to reopen the case) was unreasonable when it found that his appellate counsel (for his appeal of his conviction) was not ineffective for the failure to "properly address the trial court coercion of testimony from the state's key witness."

The state appellate court, ruling on Rembert's motion to reopen his appeal pursuant to Rule 26(B), held:

> [A]ppellant contends in the application that appellate counsel was ineffective when he raised an assignment of error concerning the manner in which the trial court coerced the testimony of Kimberly Gorman but

>failed to explain how the trial court's coercion prejudiced appellant. In his prior appeal, appellant asserted that he was denied a fair trial when the trial court coerced Ms. Kimberly Gorman to testify by threatening to find her in contempt and to sentence her to eight months in the Ohio Reformatory for Women, to be served after she completed the current sentence at the Department of Youth Services. Appellant asserts that Ms. Gorman's testimony was tainted as a result of the trial court's actions and that she has since recanted her testimony. Further, appellant asserts that Kenneth Gorman, the victim of the offenses, has since told police that he believes that it was another man who committed the robbery. Essentially appellant asserts that Kenneth Gorman only testified as he did to avoid the trial court threatening and coercing him to testify as it did Ms. Gorman. However, all of these assertions are outside of the record before this court. Appellant has yet to point to anything it the record before the court that demonstrates prejudice to appellant. [Footnote omitted.] Accordingly, we find that appellant has failed to create a genuine issue as to whether appellant was deprived of the effective assistance of counsel.

[dkt. 5, at 20-21].

Judge Perleman reviewed the above, and concluded that:

>[T]he foregoing conclusions of the state appellate court that the petitioner's appellate counsel's failure to adequately argue on appeal the issue of the trial court's alleged coercion of the testimony of Ms. Gorman did not rise to the level of ineffective assistance of counsel was not an objectively unreasonable application of *Strickland* to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly considering the evidence against petitioner at trial, including the testimony of the victim, as well as the fact that his argument is premised entirely on his own unsupported allegations, all of which would undermine petitioner's claims of prejudice.

[dkt. 8, at 10].

Rembert objects to both determinations:

>Both the Ohio Appellate Court and Magistrate Perelman failed to acknowledge that petitioner's assertions are directly related to counsel's failure to argue the issue as it pertained to petitioner. Appellate counsel was appointed to represent petitioner not Kimberly Gorman. Accordingly, the Ohio Appellate Court was absolutely correct in determining that the argument set forth by appellate counsel was not

> directly relevant to petitioner's rights.
>
> However, counsel should have, and indeed had a duty, to present the appellate court with case law supporting his chosen contentions. Having failed to utilize available case law and present viable argument relevant to petitioner's rights to a fair trial constituted ineffectiveness under the circumstances of this case. It thus follows the Appellant Court's determination fails under 28 U.S.C. 2254(d)(1) and (2). It likewise must follow that Magistrate Perelman's determination is equally unpersuasive.

[dkt. 9, at 5].

Rembert's objection is simply reiterating the same argument that Judge Perelman addressed in his review of the state appellate court's determination. "The Court will not entertain the objections which simply restate the legal arguments rejected by the Report." *Felder v. Ohio Adult Parole Authority*, 2009 WL 3763067 (N.D. Ohio 2009); *see also King v. Caruso*, 542 F.Supp.2d 703 (E.D. Mich. 2008) ("General objections, or those objections that restate arguments made before the magistrate are not sufficient to alert the Court to alleged errors made by the magistrate judge. In other words, if the "objection" merely states a disagreement with the magistrate's suggested resolution or summarizes what was brought before the magistrate, it is not an objection for the purposes of this review." (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 508 (6th Cir.1991))).

Rembert's objection is that he believes neither the state courts nor Judge Perelman really understand his argument. It is Rembert who does not seem to understand, however. His argument is that his appellate counsel failed to argue the issues on behalf of his interests. This Court fully understands Rembert's argument. The argument, however, is based on evidence not properly before this Court, or the state appellate courts, because it is not part of the record. Rembert's various claims of coerced testimony or later recantations are simply not supported by any evidence in the record.

Nonetheless, the Court has reviewed Rembert's objections *de novo*. Rembert has failed to

-11-

provide any case law or demonstrate that his appellate counsel's performance satisfied *Stickland* for a finding of ineffective assistance. Specifically, Rembert has not shown that his attorney's performance "undermine[d] confidence in the outcome"[6] or that "but for counsel's unprofessional errors, result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Moreover, the appellate court did not unreasonably apply *Stickland* to the facts of the case. Rembert has put forth no argument capable of surmounting AEDPA's high barrier for relief.

### B. Rembert's Second Objection - Ground Two

Rembert's second ground for relief argues that his appellate counsel was ineffective for "failing to sever/bifurcate the charge of having a weapon while under disability." [dkt. 9, at 6]. The appellate court held that the error, if any, was harmless because of the overwhelming evidence of Rembert's guilt. Rembert argues that the "assertion of overwhelming evidence would turn on whether the identification of petitioner as the accomplice in the robbery is tainted and therefore unreliable." Rembert argues, in the form of his second objection, that

> Petitioner presented Magistrate Perelman with a sufficient record to establish that the identification of petitioner by the victim, Mr. Kenneth Gorman, was unreliable. It thus follows that the Trial Court's coercion of Kimberly Gorman played a role in the State of Ohio's ability to establish that petitioner was the accomplice identified by Kenneth Gorman.
> . . .
> [I]t is clear that there exist a factual dispute concerning the identification of petitioner as the accomplice in the robbery in question.

[dkt. 9, at 7-8].

---

[6] As the State notes in its Return of Writ, "Rembert overlooks too that Kenneth Gorman was able to identify him based upon viewing him at the time the crime was committed. Though Gorman did not know who he was by name, he observed him long enough to recognize him in the phot array." [dkt. 5, at 22].

Rembert has attempted to bootstrap a factual dispute into a second "objection." Judge Perelman's legal conclusions on Rembert's second ground for relief properly rely on the record before him, including the state court's factual findings. Rembert cannot dispute the factual findings or determination of the state courts without putting forth "clear and convincing evidence" that the state court's factual finding was incorrect. 28 U.S.C. § 2254(e)(1). Rembert has failed to do so, and accordingly, his second objection is without merit.

## IV. CONCLUSION

Accordingly, the Court **ADOPTS** the R&R in its entirety and **DENIES** Rembert's petition for a writ of habeas corpus. Further, upon finding that Rembert has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability of this order. See 28 U.S.C. 2253(c)(2). Therefore, this order is final and not appealable.

IT IS SO ORDERED.

      /s/ *Kathleen M. O'Malley*
      KATHLEEN M. O'MALLEY
      UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010